<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TOBII TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEE S. WEINBLATT, <br><br> Defendant. | Case No. 2:20-cv-08062 (BRM) (JSA) <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Plaintiff Tobii Technology, Inc. ("Tobii") seeking to dismiss a Counterclaim filed by Defendant Lee S. Weinblatt's ("Weinblatt") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 20.) Weinblatt opposed the motion. (ECF No. 26.) Tobii replied. (ECF No. 27.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Tobii's Motion to Dismiss is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [Counterclaim] and draw[s] all inferences from the facts alleged in the light most favorable to" Weinblatt. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington*

*Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Weinblatt is an inventor in the field of eye movement technology. (ECF No. 26 at 9.) Weinblatt is the holder of U.S. Patent No. 7,641,341 B2 (the "'341 Patent"), which was issued on January 5, 2010. (ECF No. 9-1 at 2.) The '341 Patent covers an improved method and apparatus for measuring a viewer's saccadic eye motion (or saccade), as an indicator of the level of the viewer's interest in a visual stimulus such as an advertisement. (ECF No. 26 at 11–12.) Weinblatt alleges Tobii manufactures and sells products that are covered by one or more claims of the '341 Patent. (*Id*. at 9–10.)

On July 1, 2020, Tobii filed a Complaint against Weinblatt, seeking a declaratory judgment that Tobii is not infringing and has not infringed the '341 Patent. (ECF No. 1.) On November 11, 2020, Weinblatt filed a Counterclaim alleging infringement by Tobii of the '341 Patent. (ECF No. 9 at 22–29.) The Counterclaim asserts infringement of claims 1, 3–7, 10–11, 13–14, 16–20, 23–24, and 26 of the '341 Patent (the "Asserted Claims"). (*Id*. at 25.) On December 16, 2020, Tobii filed a Motion to Dismiss with prejudice Weinblatt's Counterclaim, seeking to invalidate the Asserted Claims under 35 U.S.C. §§ 101 and 112, ¶¶ 2 & 6.[1] (ECF No. 20.) On January 18, 2021, Weinblatt opposed the motion, defending the validity of the '341 Patent under § 101 (patent subject matter eligibility) and § 112 (definiteness). (ECF No. 26.) On January 25, 2021, Tobii filed a Reply. (ECF No. 27.)

II.     **LEGAL STANDARD**

---

[1] Paragraph 2 and Paragraph 6 of 35 U.S.C. § 112 were replaced by § 112(b) and § 112(f) respectively when the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011) took effect on September 16, 2012. Because the application resulting in the '341 Patent was filed before that date, the Court refers to the pre-AIA version of § 112.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228 (citing *Worldcom*, 343 F.3d at 653). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just

3

conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

**III.   DECISION**

    **A.   Tobii's Motion to Dismiss Is Denied on the § 101 Issue**

Tobii argues the Asserted Claims are directed to the abstract idea of displaying a stimulus (*e.g.*, a commercial) together with monitored information relating to the stimulus. (ECF No. 20-1 at 35.) Tobii maintains the core of the '341 Patent, independent claim 1, recites a method that exposes (*i.e.*, displays), monitors (*i.e.*, collect), and displays information; therefore, it is of a purely

4

functional nature and is not directed to a concrete embodiment of an idea. (*Id*. at 35–36.) Tobii contends what is claimed in the '341 Patent is not actively "determining" the viewer's interest but "displaying" information as an indication of a viewer's interest, which only represents the purpose or result of "displaying" and does not change the abstract nature of the claims. (ECF No. 27 at 10.) Tobii asserts the '341 Patent only uses well-known components and therefore is not a technological improvement. (*Id*. at 11.)

Weinblatt counters the '341 Patent is targeted at a technological improvement in the method and apparatus for determining the effectiveness of an advertisement, by focusing on the measurement of saccades, not fixations, to determine a viewer's level of interest in advertisements or specific portions thereof. (ECF No. 26 at 15–16.) Weinblatt explains claim 1 of the '341 Patent is not directed to a mere abstract idea, because it addresses a technological problem—determining a viewer's level of interest based on the saccadic information—that arises only in the computer context, with no manual or pen-and-paper equivalent. (*Id*. at 16.) Weinblatt states the technology underlying the '341 Patent does not merely collect information, but changes the character of the information by measuring tiny, fast saccadic movements of an eye and using that to determine the level of interest of a viewer in certain aspects of an advertisement. (*Id*. at 25–26.) The Court declines to make a decision on the § 101 issue at this stage.

The analysis under 35 U.S.C. § 101 follows the two-step process articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l* to determine whether the patent claims at issue recite a patent-eligible subject matter: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts," such as "laws of nature, natural phenomena, and abstract ideas;" and (2) if so, whether "an element or combination of elements" in each claim contains an "inventive concept" which is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the ineligible concept itself." 573 U.S. 208, 217–18 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)). "[T]he first-stage inquiry [] look[s] at the focus of the claims," *i.e.*, "their character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations omitted). "If the claims are not directed to an abstract idea, the inquiry ends." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citing *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017)). Otherwise, the court should proceed to step two of the *Alice* analysis to determine whether "the claimed elements— 'individually and as an ordered combination'—recite an inventive concept." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). This analysis entails "whether the combination of elements was well-understood, routine, and conventional at the time of the invention." *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 963 (Fed. Cir. 2018).

Claims of patent infringement should be dismissed under Rule 12(b)(6) if the "asserted patents are invalid as patent-ineligible under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1351 (Fed. Cir. 2014). In applying § 101 at the pleading stage, a court "will address the claims [at issue] as preventing a motion to dismiss and will construe those patent claims in 'the manner most favorable' to [nonmovants]." *Scibetta v. Slingo, Inc.*, Civ. A. No. 16-8175, 2018 U.S. Dist. LEXIS 7826, at *17, 22 n.3 (D.N.J. Jan. 17, 2018) (denying the defendant's motion to dismiss the plaintiffs' patent infringement case and rejecting the defendant's argument that the patents at issue were "directed at a patent-ineligible subject matter" (citing *id.* at 1348)); *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 275 F. Supp. 3d 306, 308 (D. Mass. 2017), *aff'd*, 915 F.3d 743 (Fed. Cir. 2019) ("In applying § 101 at the pleading stage, the court construes the patent claims in a manner most favorable to the non-moving party." (citing *Content Extraction*, 776 F.3d at 1349)). The same standard applies when a "Rule 12(b)(6)

6

[m]otion is used to assert an affirmative defense—that the patents are subject matter ineligible under Section 101." *M2M Sols. LLC v. Amazon.com, Inc.*, Civ. A. No. 17-202, 2017 U.S. Dist. LEXIS 203110, at *5 (D. Del. Dec. 11, 2017) ("[D]ismissal is permitted only if the well-pleaded factual allegations in the [c]omplaint, construed in the light most favorable to the plaintiff, suffice to establish the defense." (citations omitted)).

Therefore, to succeed on its motion to dismiss, it is not enough for Tobii to just present a legal theory that suggests the Asserted Claims are directed to an abstract idea. Instead, Tobii "bears the burden of showing that no claim has been presented." *Mendez v. Shah*, 28 F. Supp. 3d 282, 288 (D.N.J. 2014) (quoting *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)). That is, on the § 101 issue, Tobii must demonstrate the Asserted Claims, even if construed in a manner most favorable to Weinblatt, are directed to an abstract idea. Because Weinblatt invoked the pen-and-paper test in response to Tobii's argument that the Asserted Claims are directed to an abstract idea, Tobii must establish, in accordance with his "ultimate burden of proving [patent] infringement," *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citations omitted), that the pen-and-paper test either does not apply to the Asserted Claims or cannot show the Asserted Claims are not directed to an abstract idea.

"The 'pen and paper' framework is . . . useful [] in determining whether [] patents are directed at an abstract idea." *Open Parking, LLC v. ParkMe, Inc.*, Civ. A. No. 15-976, 2016 U.S. Dist. LEXIS 85260, at *20 (W.D. Pa. June 30, 2016). "[A] claim whose 'steps can be performed in the human mind, or by a human using a pen and paper' is directed to an 'unpatentable mental process[].'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372–73 (Fed. Cir. 2011)); *see also ENCO Sys. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021) ("[C]laims focused just on

replacing 'pen and paper methodologies' with 'data synthesis technology'—without a focus on specific, assertedly improved processing techniques—[are] directed to an abstract idea." (quoting *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019))); *NantWorks, LLC v. Niantic, Inc.*, Civ. A. No. 20-6262, 2021 U.S. Dist. LEXIS 487, at *10–11 (N.D. Cal. Jan. 4, 2021) ("[I]f a process can be performed in other ways—mentally, or by putting pen to paper—it is an abstract idea." (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016))). "'[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible." *ENCO Sys.*, 845 F. App'x at 957 (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)). Conversely, a claim is likely not directed to an abstract idea if it covers a task that a human cannot perform with a pen and paper. *See Linksmart Wireless Tech., LLC v. Caesars Entm't Corp.*, Civ. A. No. 18-862, 2019 U.S. Dist. LEXIS 220543, at *13–14 (D. Nev. Dec. 23, 2019) (finding that the claims at issue "were directed to more than an abstract idea," in part because they reflected "more than a mental process easily done with pen and paper" (citations omitted)); *Confident Techs., Inc. v. AXS Grp. LLC*, Civ. A. No. 17-2181, 2018 U.S. Dist. LEXIS 10949, at *16–17 (S.D. Cal. Jan. 23, 2018) (finding that "[d]efendants [] failed to establish that the [patent at issue] [wa]s directed to an abstract idea," in part because "[d]efendants fail[ed] to adequately explain how a human with a pencil and paper could administer the claimed" activity); *InfoGation Corp. v. ZTE Corp.*, Civ. A. No. 16-1901, 2017 U.S. Dist. LEXIS 44873, at *18–19 (S.D. Cal. Mar. 27, 2017) (finding that a claim was "directed to a specific improvement to an existing technological process rather than an abstract idea," because "a human with a pencil and paper cannot" perform the claimed improvement).

Here, Weinblatt suggests a human cannot perform the activity covered by the '341 Patent,

8

*i.e.*, measuring saccades. (ECF No. 26 at 27.) Tobii does not dispute this factual position and offers no reason why the pen-and-paper test is inapplicable here.[2] Therefore, there is a factual question concerning whether a human can perform with a pen and paper the activity covered by the '341 Patent. In other words, there is a factual question concerning whether the Asserted Claims are directed to an abstract idea. The Asserted Claims may not necessarily fail *Alice* step one.

Even if the pen-and-paper test "is not dispositive and is only one test to determine if a claim is directed to an abstract idea," *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, Civ. A. No. 15-29, 2015 U.S. Dist. LEXIS 77411, at *29 (W.D. Tex. June 12, 2015), *aff'd*, 838 F.3d 1266 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 219–20), the Court must apply the test in a manner most favorable to Weinblatt. That is, the pen-and-paper test creates a factual question sufficient for Weinblatt to survive Tobii's Motion to Dismiss on the § 101 issue. *See Capstan AG Sys. v. Raven Indus., Inc.*, 228 F. Supp. 3d 1235, 1245 n.9 (D. Kan. 2017) (denying the defendant's motion to dismiss the plaintiff's patent infringement case, though "[d]efendants interpret[ed] the claimed systems and methods as ones consisting of nothing more than actions that a human being could do with pencil and paper," because the court found "the [c]omplaint and patents [at issue] d[id] not answer this potentially outcome-determinative question" on the pen-and-paper test and therefore needed "more evidence than it can consider at the motion to dismiss stage" (citations omitted)); *Card Verification Sols., LLC v. Citigroup Inc.*, Civ. A. No. 13-6339, 2014 U.S. Dist. LEXIS 137577, at *11–12 (N.D. Ill. Sept. 29, 2014) (denying the defendant's motion to dismiss the plaintiff's patent infringement case, because whether a method covered by the patent at issue, alleged by the

---

[2] As for the pen-and-paper test, Tobii only argues it "is one of several approaches to determining if a claim is abstract, but not one upon which Tobii relies." (ECF No. 27 at 12 n.10.) This does not negate the applicability of the test here.

defendant to be an abstract idea, "c[ould] be performed by a human with nothing more than pen and paper pose[d] a factual question inappropriate at the motion to dismiss stage").

Interestingly, Weinblatt cites a California case that found the pen-and-paper test not "helpful" where the subject of the claim is "not conventional activity that humans engaged in before computers." (ECF No. 26 at 28 (citing *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.* ("*CIT*"), 59 F. Supp. 3d 974, 995 (C.D. Cal. 2014) (finding that the "[p]encil-and-paper analysis is inappropriate" where the claim at issue does not cover a "conventional activity that humans engaged in before computers")).) Further, Weinblatt admits "the problem of determining a level of interest based on saccadic information arises only in the computer data context with high speed cameras and processors and has no manual equivalent whatsoever." (*Id*. at 29.) In other words, Weinblatt admits the activity covered by the '341 Patent is not a conventional activity that humans engaged in before computers. Under *CIT*, Weinblatt's admission would mean the pen-and-paper test is inapplicable here. However, the Court declines to follow *CIT*, which does not bind this Court. Moreover, *CIT*'s potential exception to the pen-and-paper test has not been adopted by the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") or any court in the Third Circuit. As a result, the Court still considers the pen-and-paper test relevant in the *Alice* step one analysis here.

Construing the Asserted Claims in a manner most favorable to Weinblatt, the Court declines to conclude, at this stage, the Asserted Claims are directed to an abstract idea. Accordingly, Tobii's Motion to Dismiss is **DENIED** on the § 101 issue as to all the Asserted Claims.

B.  **Tobii's Motion to Dismiss Is Granted on the § 112 Issue**

The parties agree claim 14 of the '341 Patent is drafted in a "means-plus-function" format

under § 112. (ECF No. 20-1 at 45; ECF No. 26 at 36.) The parties dispute whether there is adequate corresponding structure disclosed in the '341 Patent for claim 14's claimed function of "displaying the visual stimuli together with the monitored saccadic eye motion that occurred while the viewer was being exposed to the visual stimuli as an indication of the viewer's interest in such visual stimuli" (the "Claimed Function"). (ECF No. 20-1 at 45–46; ECF No. 26 at 36–37.) This disputed point will be addressed below.

"Indefiniteness is a question of law." *Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) (citing *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008)). "If a claim fails to reasonably apprise one skilled in the art of the boundaries of the claim when read in light of the specification, then the claim is invalid under § 112 for indefiniteness." *Id.* (citing *Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)). Under § 112, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.

"Claim limitations drafted pursuant to 35 U.S.C. § 112, [¶] 6 are termed means-plus-function limitations." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. "Once a court concludes that a claim limitation is a means-plus-function limitation, two steps of claim construction remain: 1) the court must first identify the function of the limitation; and 2) the court must then look to the specification and identify the corresponding structure for that function." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). "[I]n order for a means-plus-function claim to be valid under § 112, the

corresponding structure of the limitation 'must be disclosed in the written description in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation.'" *Id.* (quoting *Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1382 (Fed. Cir. 1999)).

### 1. Display Processor 9 Is a Part of the Corresponding Structure for the Claimed Function

Tobii maintains the corresponding structure disclosed for the Claimed Function includes Display Processor 9, Display Circuit 5, and Video Display 3.[3] (ECF No. 20-1 at 45.) Tobii insists Display Processor 9 is a part of the corresponding structure, because it provides the signal for the monitored saccadic eye motion as referred to the Claimed Function, while Display Circuit 5 and Video Display 3 are unable to provide that signal. (ECF No. 27 at 17.) Weinblatt argues performing the Claimed Function only requires Display Circuit 5 and Video Display 3, which the parties agree are admitted, well known structures. (ECF No. 20-1 at 45; ECF No. 26 at 37.) The Court disagrees with Weinblatt.

"While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002)). Here, claim 14's plain language shows the Claimed Function includes at least three functional elements: (1) "displaying;" (2) "together with . . . while;" and (3) "as an indication of." The first

---

[3] Display Processor 9, Display Circuit 5, and Video Display 3 are different components in the drawing provided in the '341 Patent that depicts a schematic block diagram of a system for implementing an exemplary embodiment of the invention. (ECF No. 9-1 at 3; ECF No. 20-1 at 15.)

element means the *display* of two signals, *i.e.*, the visual stimuli and the viewer's saccades triggered by the visual stimuli, which are (at least in part) performed by Display Circuit 5 and Video Display 3. The second element means displaying the two signals *together* and *simultaneously*.[4] The third element refers to the ability of such signal display to *indicate* the viewer's interest in the visual stimuli.

Display Processor 9 is involved in actually performing the third element. The '341 Patent's specification provides: "the level of viewer interest in a particular image is regarded as being related to the number of saccades . . . that occurs during a given period of time." (ECF No. 9-1 at 4:42–45.) Display Processor 9 helps indicate the level of viewer interest in at least two ways. First, it "includes an internal clock . . . which can be used to set a selected measurement time period." (*Id*. at 4:48–50.) "A reading is obtained of whatever number of [saccadic] oscillations occur during that given time period." (*Id*. at 4:50–52.) With this, Display Processor 9 is involved in producing the readings, *i.e.*, the raw data, which indicate the viewer's interest. Second, Display Processor 9 "converts such readings into data suitable for the particular way in which such information is to be displayed," such as "a number superimposed on the program being reproduced on [Video] [D]isplay 3." (*Id*. at 4:52–56.) With this, Display Processor 9 produces the displayable data that indicate the viewer's interest. In contrast, Display Circuit 5 and Video Display 3 are not involved in the above processes that provide for the ability to indicate a viewer's interest. Therefore, Display Processor 9 is a part of the corresponding structure for the Claimed Function and must be disclosed in the specification.

        2.     **The Disclosure for Display Processor 9 Is Inadequate for Lacking Any Algorithm**

---

[4] Notably, neither party addresses the corresponding structure for this second element, especially Memory 11 that is responsible for time-synchronizing the two signals. (*See* ECF No. 9-1 at 4:22–25.) As a result, the Court need not analyze the second element.

Tobii states the '341 Patent contains no description on how Display Processor 9 provides for the ability to perform the Claimed Function: the '341 Patent only discloses that Display Processor 9 converts the reading of the number of saccades occurring in a given time period to a displayable signal, but provides no algorithm to show how Display Processor 9 should be programmed and no explanation on how the conversion process is done. (ECF No. 20-1 at 45–46; ECF No. 27 at 18.) Tobii maintains Display Processor 9 is a general-purpose microprocessor that cannot perform the Claimed Function without special programming, which necessitates the disclosure of an underlying algorithm. (ECF No. 20-1 at 47.) Tobii adds, the algorithm must be disclosed in a degree of detail such that a person having ordinary skill in the art ("POSA") would know how to program the microprocessor to achieve the Claimed Function. (*Id*.) Tobii contends claim 14 is indefinite, because the '341 Patent does not describe any algorithm in any form accompanying or explaining the Claimed Function. (*Id*. at 48.)

Weinblatt asserts the '341 Patent provides sufficient definiteness with respect to Display Processor 9. (ECF No. 26 at 38.) Weinblatt explains Display Processor 9 is described as a processor with an internal clock to measure saccades over a period of time and convert those measurements into displayable data. (*Id*. at 39.) Weinblatt stresses a specific algorithm need not be disclosed to avoid indefiniteness where the function in question would be readily apparent to a POSA. (*Id*.) Weinblatt posits, whether a POSA would identify the corresponding structure and whether the disclosure of the corresponding structure is sufficiently definite to a POSA are issues inappropriate for resolution at the pleading stage; instead, these issues should be decided as part of the claim construction process with expert testimony. (*Id*. at 45.) The Court disagrees.

To have a valid means-plus-function claim, "the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly

14

link that structure to the function." *Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 42 (Fed. Cir. 2020) (citing *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1379 (Fed. Cir. 2013)). "[I]f a patentee has invoked computer-implemented means-plus-function claiming, the corresponding structure in the specification for the computer implemented function must be an algorithm unless a general purpose computer is sufficient for performing the function." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (citations omitted); *see also EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("A microprocessor or general purpose computer lends sufficient structure only to basic functions of a microprocessor. All other computer-implemented functions require disclosure of an algorithm."). "Failure to disclose the corresponding algorithm for a computer-implemented means-plus-function term renders the claim indefinite." *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014) (citing *Ergo Licensing LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012)). Therefore, "in a means-plus-function claim 'in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008) (quoting *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008)).

Here, it is undisputed that Display Processor 9 is a computer or microprocessor, which triggers the algorithm disclosure requirement. The Court does not discern, and Weinblatt does not allege, the function of Display Processor 9 "can be achieved by any general purpose computer without special programming" so as to qualify for "a narrow exception to" the algorithm disclosure requirement. *Ergo*, 673 F.3d at 1364–65 (quoting *In re Katz Interactive Call Processing Patent*

15

*Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)). Instead, as discussed in Part III.B.1, *supra*, Display Processor 9 performs the Claimed Function by including an internal clock that can set a selected measurement time period for saccades. The selection of a specific measurement time period involves "specific functions that would need to be implemented by programming a general purpose computer to convert it into a special purpose computer capable of performing those specified functions." *Katz*, 639 F.3d at 1316 (citations omitted). Such specific functions are more than merely "'processing,' 'receiving,' and 'storing,' [which] can be achieved by any general purpose computer without special programming." *Id*. Therefore, an algorithm must be disclosed to explain the performance of the Claimed Function by Display Processor 9.

An algorithm is broadly defined as "a step-by-step procedure for solving a problem" or "accomplishing a given result." *Intellectual Ventures I, LLC v. AT&T Mobility, LLC*, Civ. A. No. 12-193, 2015 U.S. Dist. LEXIS 36546, at *37 (D. Del. Mar. 24, 2015) (quoting *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384–85 (Fed. Cir. 2011)). "An algorithm may be expressed 'in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.'" *Ergo*, 673 F.3d at 1365 (quoting *Typhoon*, 659 F.3d at 1385). "Even described 'in prose,' an algorithm is still 'a step-by-step procedure for accomplishing a given result.'" *Id*. (quoting *Typhoon*, 659 F.3d at 1385). The Court does not discern, and Weinblatt does not point to, any algorithm for Display Processor 9 in the '341 Patent. Weinblatt alleges the following description in the specification is a sufficient disclosure: "The Display Processor 9 is described as a processor with an internal clock to measure saccades over a period of time and convert those measurements into data suitable for display on Video Display 3, such as through a number or bar graph." (ECF No. 26 at 39.) However, the only structural language in this description is "a processor with an internal clock," which does not reflect

16

a step-by-step procedure and cannot qualify as an algorithm. The rest of the description contains "purely functional language, which simply restates the function associated with the means-plus-function limitation [and] is insufficient to provide the required corresponding structure." *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) (citations omitted). Therefore, the description "[s]imply disclos[es] a black box that performs the recited function," which "is not a sufficient explanation of the algorithm required to render the means-plus-function term definite." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014) (finding the description that "'[c]ode assembler instructions' are executed 'to assemble a second code module'" was "nothing more than a black box" (citing *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518 (Fed. Cir. 2012))); *see also In re TLI Communs. LLC Patent Litig.*, 87 F. Supp. 3d 773, 802 (E.D. Va. 2015) ("[T]he corresponding structure accompanying a means-plus-function claim must describe how a particular function is carried out, instead of merely disclosing an abstract structure without further explanation.").

The Court rejects Weinblatt's argument that the disclosure of algorithms is not necessary where, as here, the relevant algorithms may be readily apparent to a POSA. Indeed, some earlier Federal Circuit decisions suggest a relaxation on the algorithm disclosure requirement when the relevant algorithms are readily apparent to a POSA.[5] However, these decisions only demonstrate

---

[5] *See, e.g.*, *Aristocrat Techs. Austl. Pty Ltd. v. Multimedia Games, Inc.*, 266 F. App'x 942, 946 (Fed. Cir. 2008) ("The law does not require that structure be explicitly identified as long as a person of ordinary skill in the art would understand what structure is identified in the specification." (citing *Atmel*, 198 F.3d at 1380)); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1214 (Fed. Cir. 2003) ("[T]here would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use."); *In re Kullmann*, 115 F.3d 942, 946 (Fed. Cir. 1997) (finding that the written description at issue was sufficiently definite, even though "the written description d[id] not disclose exactly what mathematical algorithm w[ould] be used to compute the end result," when "it d[id] state that 'known algorithms' c[ould] be used to solve standard equations which [we]re known in the art").

"the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart." *Aristocrat*, 521 F.3d at 1333 (commenting on the cited portion of the *Elekta* opinion in footnote 5 (citations omitted)). Such a relaxation of the algorithm disclosure requirement "has no application" if "there was no algorithm at all disclosed in the specification." *Id*. This position—*i.e.*, a POSA's potential knowledge of the relevant algorithms cannot completely relieve the algorithm disclosure requirement—has been repeatedly confirmed in a number of more recent Federal Circuit cases.[6]

Therefore, the disclosure with respect to Display Processor 9 is insufficient under § 112 for lacking any algorithm to explain its performance of the Claimed Function. Whether a relevant algorithm is readily apparent to a POSA is irrelevant. "[S]ince it has been determined that no algorithm has been disclosed at all, the Court [i]s not required to actually consider the parties'

---

[6] *See, e.g.*, *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1344 (Fed. Cir. 2016) ("Although . . . a person of ordinary skill in the art would know of potential logarithmic conversion functions to implement, this does not create structure in the patent where there was none to begin with." (citing *Triton*, 753 F.3d at 1379)); *EON Corp.*, 785 F.3d at 623 ("[A] person of ordinary skill in the art plays no role whatsoever in determining whether an algorithm must be disclosed as structure for a functional claim element."); *Triton*, 753 F.3d at 1379 (finding that the patent at issue failed to satisfy the disclosure requirement under § 112, because "a bare statement that known techniques or methods can be used does not disclose structure," and "[a]lthough a person of skill in the art might be able to choose an appropriate numerical integration algorithm and program it onto a microprocessor, the patent discloses no algorithm at all" (citations omitted)); *Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) ("When dealing with a 'special purpose computer-implemented means-plus-function limitation,' we require the specification to disclose the algorithm for performing the function . . . . While it is true that the patentee need not disclose details of structures well known in the art, . . . the specification must nonetheless disclose some structure." (citations omitted)); *Noah*, 675 F.3d at 1313 ("Where no structure appears, the question is . . . whether an algorithm was disclosed at all. When the specification discloses some algorithm . . . the question is whether the disclosed algorithm, from the viewpoint of a person of ordinary skill, is sufficient to define the structure and make the bounds of the claim understandable." (citations and internal quotation marks omitted)); *Default Proof*, 412 F.3d at 1302 ("[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification.").

expert testimony," if any. *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 889 F. Supp. 2d 677, 691 n.6 (D.N.J. 2012), *aff'd*, 732 F.3d 1376 (Fed. Cir. 2013) (citing *Default Proof*, 412 F.3d at 1302); *see also Fortinet, Inc. v. Sophos, Inc.*, Civ. A. No. 13-5831, 2015 U.S. Dist. LEXIS 146317, at *17 (N.D. Cal. Oct. 28, 2015) ("[E]xpert testimony can only 'fill in the blanks' where there is a partially disclosed algorithm; it cannot be relied upon in the absence of any disclosure of an algorithm." (citing *Noah*, 675 F.3d at 1313)).

As a result, independent claim 14 of the '341 Patent, which recites the Claimed Function performed in part by Display Processor 9, is invalid for indefiniteness. The dependent claims related to claim 14 "would also be invalid [for indefiniteness], because they incorporate the elements of [the] independent claim." *Ibormeith*, 732 F.3d at 1378; *see also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (affirming the district court's holding that "the specification contained insufficient structure to support one of the means-plus-function limitations found in claim 1 and, by incorporation, in dependent claims 2–35"). Accordingly, Tobii's Motion to Dismiss is **GRANTED** on the § 112 issue.

"The determination of the claimed function and corresponding structure of a means-plus-function claim limitation is a question of law." *AllVoice Computing PLC v. Nuance Communs., Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007) (quoting *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1087 (Fed. Cir. 2003)); *see also Pictometry Int'l Corp. v. Geospan Corp.*, Civ. A. No. 11-1423, 2012 U.S. Dist. LEXIS 116044, at *11 (D. Minn. Aug. 17, 2012) ("It is a question of law whether the specification fails to disclose a corresponding structure and is, therefore, invalid for indefiniteness pursuant to 35 U.S.C. § 112 ¶ 2." (citing *Cardiac Pacemakers*, 296 F.3d at 1113)); *DE Techs., Inc. v. Dell, Inc.*, 428 F. Supp. 2d 512, 515 (W.D. Va. 2006) ("The issue of whether a patent is indefinite for failure to disclose a corresponding structure is a question of law." (citing

*Default Proof*, 412 F.3d at 1298)). Therefore, the dismissal of Weinblatt's Counterclaim on the § 112 issue as to claims 14, 16–20, 23–24, and 26 is **WITH PREJUDICE**. *See Allen v. Quicken Loans, Inc.*, Civ. A. No. 17-12352, 2018 U.S. Dist. LEXIS 192066, at *20 (D.N.J. Nov. 9, 2018) ("Because [the plaintiff's] claims fail as a matter of law, [they] are dismissed with prejudice." (citations omitted)); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 370 (D.N.J. 2003) ("[T]he following claims are dismissed with prejudice . . . because they are invalid as a matter of law.").

### IV.    CONCLUSION

For the reasons set forth above, Tobii's Motion to Dismiss is **DENIED** on the § 101 issue and is **GRANTED** on the § 112 issue. Weinblatt's Counterclaim is **DISMISSED WITH PREJUDICE** as to claims 14, 16–20, 23–24, and 26 of the '341 Patent. An appropriate order follows.


**Date: August 30, 2021**                              */s/ Brian R. Martinotti*
                                                                          **HON. BRIAN R. MARTINOTTI**
                                                                          **UNITED STATES DISTRICT JUDGE**